Approved: _____
Kevin Sullivan
Assistant United States Attorney

Before:   THE HONORABLE ANDREW E. KRAUSE
          United States Magistrate Judge
          Southern District of New York

- - - - - - - - - - - - - - - - - - x   20mj/3004

UNITED STATES OF AMERICA            :   **SEALED COMPLAINT**

           - v. -                   :   Violations of
                                        18 U.S.C. § 875(c)
MICHAEL LANNI,                      :
                                        COUNTIES OF OFFENSE:
              Defendant.            :   WESTCHESTER & DUTCHESS

- - - - - - - - - - - - - - - - - - x

SOUTHERN DISTRICT OF NEW YORK, ss.:

      Kevin M. Gonyo, being duly sworn, deposes and says that he is a Special Agent with the Federal Bureau of Investigation, and charges as follows:

### COUNT ONE
### (Interstate Threats)

      1.  Between on or about November 2, 2020 and on or about November 10, 2020, in the Southern District of New York, MICHAEL LANNI, the defendant, knowingly and intentionally did transmit in interstate and foreign commerce a communication containing a threat to injure the person of another, to wit, LANNI sent emails and voice text messages to multiple individuals threatening to kill a doctor who previously treated him.

      (Title 18, United States Code, Section 875(c).)

### COUNT TWO
### (Interstate Threats)

      2.  On or about November 10, 2020, in the Southern District of New York, MICHAEL LANNI, the defendant, knowingly and intentionally did transmit in interstate and foreign commerce a communication containing a threat to injure the person of another, to wit, LANNI sent voice text messages to an

individual threatening to injure an investigator employed with the Drug Enforcement Administration ("DEA").

(Title 18, United States Code, Section 875(c).)

The bases for my knowledge and for the foregoing charges are, in part, as follows:

3. I am a Special Agent with the Federal Bureau of Investigation ("FBI"), and I have been personally involved in the investigation of this matter. This affidavit is based upon my personal participation in the investigation of this matter, my conversations with law enforcement agents, as well as my examination of reports and records. Because this affidavit is being submitted for the limited purpose of establishing probable cause, it does not include all the facts that I have learned during the course of my investigation. Where the contents of documents and the actions, statements and conversations of others are reported herein, they are reported in substance and in part.

4. Based on my conversations with other FBI agents and law enforcement officers involved in this investigation, I have learned, among other things, that an FBI agent ("FBI Employee-1") and an FBI investigative specialist ("FBI Employee-2") know and have previously interacted with MICAHEL LANNI, the defendant, because they previously resided in Peekskill, New York, and were neighbors of LANNI and his parents around that time.

5. Based on my review of a series of emails sent on or about November 2, 2020, from a single Gmail address (the "Gmail Address") to FBI Employee-1, among other individuals, at FBI Employee-1's FBI email address, I know, among other things, the following:

    a. The emails from the Gmail Address reference a doctor ("Victim-1"), later identified as a doctor who previously treated MICAHEL LANNI, the defendant. The emails from the Gmail Address also reference an individual ("Victim-2"), later identified as a diversion investigator employed with the Drug Enforcement Administration ("DEA").

2

    b. An email sent to FBI Employee-1 from the Gmail Address on or about November 2, 2020, at approximately 2:34 a.m. ET states, in part, the following:[1]

> I promised [FBI Employee-2] I wouldnt email you. But I'm not the person I used to be dr. [Victim-1] has turned me into a murderer and I'm going to get his son of a b**** ass in the f****** River if you guys don't do it fast. [Victim-2] at DOJ is a f****** joke. You're all going to have a dead doctor on your hands. . . .
>
> [FBI Employee-1] I know everywhere this guy lays his head and I'm going to get him. And if I can't get him I'll get his son

    c. An email sent to FBI Employee-1 from the Gmail Address on or about November 2, 2020, at approximately 2:38 a.m. ET states, in part, the following:

> this doctor . . . needs to lose his license his office needs to be shut down immediately this is not a threat my new life's mission is to kill him

    d. An email sent to FBI Employee-1 from the Gmail Address on or about November 2, 2020, at approximately 2:47 a.m. ET, with the subject line "Methods" states, in part, the following:

> If you guys still think I'm playing im staring at multiple deaths worth of heart attack medication, maps, tor, police scanners prepaid cash FLIR devices brand new and I've developed my own technology what is very similar what you guys buy from space coast.. reython is shit fyi...game on . . . .

---

[1] All excerpts quoted herein from emails sent from the Gmail Address are reproduced as is with the exception of inserted ellipses and bracketed modifications to protect the identities of victims and third-party individuals.

3

e. An email sent to FBI Employee-1 from the Gmail Address on or about November 2, 2020, at approximately 3:14 a.m. ET, with the subject line "Photos a worth...." states, in part, the following:

> I dont wannacookthedrbutiwill. I feel like my country let me down.

Attached to the email, among other files, is a photograph showing the following: a pair of black and gray gloves, two walkie talkies, two vials containing what appear to be different-colored pills, a device that appears to be either a miniature bolt cutter or a wire stripper, and a zippered case and cylindrical device, both with the word "FLIR" printed on them.

f. An email sent to FBI Employee-1 from the Gmail Address on or about November 2, 2020, at approximately 3:32 a.m. ET was signed "Michael C. Lanni."

6. Based on my review of a report from the Dutchess County Sheriff's Office ("DCSO") and my conversations with DCSO deputies, I know, among other things, that on or about November 2, 2020, at approximately 1:43 p.m. ET, two DCSO deputies responded to a hotel ("Hotel-1") on Westage Business Center Drive in Fishkill, New York to locate and conduct a welfare check on MICHAEL LANNI, the defendant, in light of the content in the emails sent to FBI Employee-1. I further know, among other things, the following about what occurred at Hotel-1 in connection with LANNI:

a. Upon arrival at Hotel-1, the DCSO deputies spoke to a hotel employee who confirmed that LANNI was currently staying at Hotel-1.

b. The DCSO deputies eventually located an individual they identified as LANNI outside walking a dog. The DCSO deputies explained the purpose of their visit.

c. LANNI stated, in sum and substance, that he had sent numerous emails to the FBI regarding illegal activity being conducted by Victim-1 and that he had expressed thoughts of wanting to harm himself and or Victim-1 in some of those emails. LANNI also disclosed, in sum and substance, that he has a history of mental health issues and drug abuse and that he has been brought to hospitals by the police on numerous occasions.

4

    d. The DCSO deputies inquired, in sum and substance, whether LANNI would voluntarily go with them to a hospital for a mental health evaluation. LANNI declined, at which point, the DCSO deputies explained, in sum and substance, that, based on LANNI's recent actions, he did not have a choice. They then took LANNI into custody and transported him to Mid-Hudson Regional Hospital in Poughkeepsie, New York for a mental health evaluation pursuant to New York State law.

    7. Based on my conversation with an employee of Hotel-1, I have learned that MICHAEL LANNI, the defendant, checked into Hotel-1 on or about October 28, 2020 and checked out on or about November 4, 2020.

    8. Based on my conversations with other members of law enforcement, including FBI Employee-2, and my review of a series of voice text messages sent on or about November 10, 2020, to FBI Employee-2's government-issued mobile phone, I know, among other things, the following:

    a. FBI Employee-2 recognized the voice in the series of voice text messages to be that of MICHAEL LANNI, the defendant, based on FBI Employee-2's prior interactions with LANNI.

    b. A voice text message sent to FBI Employee-2 on or about November 10, 2020, at approximately 9:03 p.m. ET states, in part, the following:

> Either cuff the doctor or cuff me. You guys are going to have a shit storm coming your way. Mark my fucking words, bro.

    c. A voice text message sent to FBI Employee-2 on or about November 10, 2020, at approximately 9:04 p.m. ET states, in part, the following:

> You made me do it. I'll just fucking say it myself. The doctor's going to be ashes blowing in the air.

    d. Two voice text messages sent to FBI Employee-2 on or about November 10, 2020, at approximately 9:08 p.m. ET -- one after the other -- refer to first name of Victim-2 and state, in part, the following:

5

> P.S. You're damn right I'm going to be gunning for [Victim-2]'s head.
>
> You wanna give her protection or do you wanna let her die. It's up to you.

e. A voice text message sent to FBI Employee-2 on or about November 10, 2020, at approximately 9:14 p.m. ET refers to the first name of Victim-2 and states, in part, the following:

> Because whatever means the world to [Victim-2] is going to disappear real fucking quick.

9. Based on my review of an FBI report and my conversations with other FBI agents, I know, among other things, that on or about November 12, 2020, at approximately 11:00 a.m. ET, FBI agents and task force officers and members of the Peekskill Police Department responded to a hotel ("Hotel-2") on John Walsh Boulevard in Peekskill, New York to locate and take into custody MICHAEL LANNI, the defendant, for a mental health evaluation pursuant to New York State law. I further know, among other things, the following about what occurred at Hotel-2 in connection with LANNI:

a. After their arrival, the law enforcement officers at the hotel observed a Subaru bearing New York license plate number xxx5942, which, based on my search of law enforcement and motor vehicle records, had been determined to belong to LANNI, pull into the parking lot. LANNI was identified as the driver of the vehicle based on a review of a photograph obtained from New York State Department of Motor Vehicle records for LANNI and was placed in the custody of the Peekskill Police and transported to Westchester Medical Center for a mental health evaluation.

b. Prior to LANNI leaving the parking lot of Hotel-2, he stated, in sum and substance, that his belongings and his dog were in room 408 of Hotel-2, which he had been renting. LANNI's family member ("Individual-1") was contacted by law enforcement officers at Hotel-2 and agreed to come to Hotel-2 to take custody of the Subaru and the contents of the room 408.

c. Hotel-2's general manager requested that all items be removed from room 408, at which point, the FBI agents and task force officers on scene went to room 408, secured

LANNI's dog and removed the contents. Among the items recovered from room 408 were the following: a GPS monitor detector, two walkie talkies, OC spray,[2] a RF GS detector,[3] a combined pocket knife and multitool, zip ties, black gloves, a black knit hat, and a FLIR brand thermal imaging camera.

        10. Based on my review of records obtained from Hotel-2, I have learned that MICHAEL LANNI, the defendant, began his stay at Hotel-2 on or about November 8, 2020 and departed Hotel-2 on or about November 12, 2020.

        11. Based on my conversation with medical personnel at the Westchester Medical Center, I have learned, among other things, that MICHAEL LANNI, the defendant, was discharged from Westchester Medical Center on or about November 19, 2020.

        12. Based on my conversations with other members of law enforcement, including FBI Employee-2, and my review of a series of voice text messages sent on or about November 30, 2020, to FBI Employee-2's government-issued mobile phone, I know, among other things, the following:

        a. FBI Employee-2 recognized the voice in the series of voice text messages to be that of MICHAEL LANNI, the defendant, based on FBI Employee-2's prior interactions with LANNI.

        b. A voice text message sent to FBI Employee-2 on or about November 30, 2020, at approximately 6:37 a.m. PT states, in part, the following:

> . . . [Y]ou need to understand and accept that I need some type of fucking update from somebody in the next couple days. Not as a threat -- just because I'm the victim of a crime and that's what I deserve. An update on the status of [Victim-1].

---

[2] Based on my training and experience, I know that OC spray is oleoresin capsicum spray, commonly referred to as pepper spray.
[3] Based on my training and experience, I know that a RF GS detector can detect radio frequencies emitted by devices and can be used to locate various kinds of concealed electronic devices.

7

    c. A voice text message sent to FBI Employee-2 on or about November 30, 2020, at approximately 6:44 a.m. PT states, in part, the following:

> I mean c'mon even part of you must find this funny at this point, no? Me playing with the stereo fuse and hooking up an aux cable to my stereo got your guys to fucking react like that with fucking assault rifles? How about you fucking react like that to [Victim-1], bro. Did I make my fucking point, yet?

    13. Based on my interview of a doctor in New York City by the same name as Victim-1 who confirmed that he is in fact Victim-1 and knows MICHAEL LANNI, the defendant, I have learned, among other things the following:

    a. Victim-1 previously provided medical treatment to LANNI on various dates between in or about July 2020 and in or about September 2020.

    b. Upon being advised of the nature of LANNI's statements concerning Victim-1, Victim-1 stated, in substance and in part, that Victim-1 is frightened by what he perceives to LANNI's obsession with Victim-1 being prosecuted, and that Victim-1 now feels in constant danger as a result of LANNI's statements.

    14. Based on my review of information provided by Google, the internet service provider of Gmail, I have learned that Google owns and operates multiple data centers that contain the servers Google uses to support Google products, like Gmail. The data centers containing such servers are in many locations, none of which are in the State of New York. Based on my training and experience, I know that email sent through Gmail transmits from the sender through Google's servers before reaching the recipient.

    15. Based on my conversations with other FBI agents and my own participation in this investigation, I know that FBI Employee-1 and FBI Employee-2 were not in the State of New York at the time they received the emails and voice texts, respectively, from MICHAEL LANNI, the defendant.

8

WHEREFORE, deponent respectfully requests that MICHAEL LANNI, the defendant, be arrested, and imprisoned or bailed, as the case may be.

/s/ Kevin M. Gonyo
(by AEK, with permission)
(credentials inspected: FBI # 26498)

Kevin M. Gonyo
Special Agent
Federal Bureau of Investigation

Sworn to me through the transmission
of this Complaint by reliable
electronic means, pursuant to
Federal Rules of Criminal Procedure
41(d)(3) and 4.1, this

5 th day of December, 2020

*Andrew Krause*                By FaceTime

HONORABLE ANDREW E. KRAUSE
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK

9